IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. 3-07-CR-0258-N |
| | § | NO. 3-10-CV-1933-N |
| ERNIE BRADFORD SCROGGINS | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Defendant Ernie Bradford Scroggins, a federal prisoner, has filed a motion to correct, vacate, or set aside his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the motion should be denied.

I.

Defendant was indicted by a federal grand jury on one count of possession of a firearm and one count of possession of ammunition by a felon, both in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). After the district court denied a motion to suppress the firearms and other evidence, defendant attempted to stipulate to factual guilt at a bench trial in order to qualify for acceptance of responsibility at sentencing, while reserving the right to appeal the suppression ruling.[1] The district court rejected the offer, telling defendant that if he put the government through the burden of a trial, he probably would not be entitled to acceptance of responsibility. Notwithstanding this admonition, defendant, through his attorney, insisted on a bench trial "to proceed with questioning regarding the

---

[1] In *United States v. Washington*, 340 F.3d 222, 228-29 (5th Cir.), *cert. denied*, 124 S.Ct. 942 (2003), the Fifth Circuit held that a defendant is not automatically disqualified from receiving a downward adjustment for acceptance of responsibility merely because he moved to suppress evidence on Fourth Amendment grounds and expressed an intent to appeal the suppression ruling, where the defendant admitted to factual conduct that formed the basis of the conviction and did not challenge the existence or credibility of the evidence itself.

Fourth Amendment issues." (*See* Trial Tr. at 23). After hearing the evidence, the court found defendant guilty as charged in both substantive counts of the indictment.[2] Punishment was assessed at 51 months confinement followed by a three-year term of supervised release. His conviction and sentence were affirmed on direct appeal. *United States v. Scroggins*, 599 F.3d 433 (5th Cir.), *cert. denied*, 131 S.Ct. 158 (2010). Defendant now seeks post-conviction relief under 28 U.S.C. § 2255.

II.

As best the court can decipher his *pro se* motion and supporting brief, defendant appears to argue that: (1) federal agents violated his Fourth Amendment rights; (2) his conviction was the result of prosecutorial misconduct; and (3) he received ineffective assistance of counsel at trial and on appeal.

A.

In three grounds for relief, defendant contends that federal agents violated his Fourth Amendment rights by entering his house without announcing their authority, by exceeding the limited scope of a *Terry* frisk search, and by seizing contraband that was not "immediately apparent." These same arguments were considered and rejected by the Fifth Circuit on direct appeal. *See Scroggins*, 599 F.3d at 441-50. With respect to the initial entry into the house by federal agents, the appeals court held such entry was made with consent. *Id.* at 441-43. The court also held that agents were justified in conducting a protective sweep of the house upon entry in view of corroborated information that a male occupant may have been involved in some murders, and because defendant attempted to flee despite commands for him to stop. *Id.* at 443. As for the scope of the protective sweep, the appeals court wrote:

---

[2] The indictment also contained a forfeiture count that was dismissed on the government's motion.

> As with *Terry* frisks, the purpose of the sweep is to protect officers' safety. It follows that if a protective sweep for potentially dangerous individuals *locates* such an individual, police may detain and frisk the subject, and, if necessary, temporarily handcuff or otherwise reasonably immobilize him.
>
> The seizure and questioning of Scroggins was constitutional under these principles. First, the officers permissibly entered the house with consent. Second, they had reason to suspect that a man that was possibly involved with some murders was present in the home. They encountered Scroggins immediately and called for him to halt, but he withdrew to a bedroom out of their view, from which they subsequently heard a loud noise. Whether Scroggins was fleeing from police, or, less plausibly, retreating from what he thought was a non-police group of aggressive invaders, the largely confirmed tip and Scroggins's conduct provided articulable grounds for concern that he presented a danger. Third, the sweep, to this point, was extremely cursory. The officers merely identified Scroggins and required him to emerge from hiding and submit to a frisk. They had not yet searched the rest of the house. Fourth, the duration of the sweep to this point was negligible. Furthermore, as to the manner of the seizure, considering that the house was not yet secure and that there was a commotion immediately prior to Scroggins's submission, it was not unreasonable for the officers to order Scroggins to the ground and handcuff him before frisking him.
>
> \* \* \* \*
>
> Here, the officers discovered the ammunition clip, elicited the location of the related firearm, and located that and another firearm in plain view, all in connection with what we have held to be a constitutionally permissible protective sweep and frisk.

*Id.* at 445-46 (emphasis in original) (internal citations omitted). Because these Fourth Amendment claims were considered and rejected on direct appeal, defendant cannot relitigate them in a section 2255 motion. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.), *cert. denied*, 106 S.Ct. 1977 (1986), *citing United States v. Jones*, 614 F.2d 80, 82 (5th Cir.), *cert. denied*, 100 S.Ct. 2174 (1980) (claims raised and resolved in a prior appeal may not be revisited on collateral review).

B.

Defendant also accuses the prosecutor of knowingly presenting false testimony at the suppression hearing and at trial. At issue is the testimony of Deputy U.S. Marshal Marquis Fomby, who testified at the suppression hearing that he did not fill out any arrest reports other than the book-in sheet, (*see* Supp. Hrg. Tr. at 16), and who allegedly gave contradictory testimony regarding the circumstances surrounding his initial entry into defendant's residence. (*See id.* at 23-24; Trial Tr. at 31, 43).

The due process clause prohibits the use of perjured testimony to obtain a conviction. *See Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Black v. Collins*, 962 F.2d 394, 407 (5th Cir.), *cert. denied*, 112 S.Ct. 2983 (1992). In order to establish a due process violation based on the use of perjured testimony, a defendant must prove that: (1) the testimony was false; (2) the prosecutor knew it was false; and (3) the evidence was material. *See Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir.), *cert. denied*, 115 S.Ct. 671 (1994). "Perjured testimony is material 'if there is any *reasonable* likelihood that the false testimony could have affected the judgment of the [court].'" *United States v. Alanis*, 88 Fed.Appx. 15, 23, 2004 WL 249594 at *7 (5th Cir. Feb. 10, 2004), *quoting Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 2027 (1999) (emphasis in original). Here, there is no basis for concluding that the minor discrepancies in Fomby's testimony were material to the outcome of the suppression hearing. Whether Fomby filled out an arrest report had no bearing whatsoever on the issue of whether Lashazzel Bell, defendant's fiancee, gave federal agents consent to enter the residence. The same is true of Fomby's testimony regarding the circumstances surrounding such entry. Regardless of whether agents followed Bell into the residence through an open door, as Fomby testified at the suppression hearing, (*see* Supp. Hrg. Tr. at 23-24), or whether Fomby opened the door for Bell

before they entered the residence, as he testified at trial, (*see* Trial Tr. at 31, 43), entry into the home was consensual. These grounds for relief should be overruled.³

C.

Finally, defendant contends that he received ineffective assistance of counsel at trial and on appeal. With respect to the conduct of trial counsel, defendant argues that his attorney: (1) failed to cite any authority, research relevant law, or exercise due diligence in preparing for the suppression hearing; (2) allowed the prosecutor to knowingly use perjured testimony; and (3) failed to impeach Fomby with his prior inconsistent statements. Defendant maintains that appellate counsel was ineffective for failing to raise these issues on direct appeal.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a defendant must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the defendant must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067. There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *See Romero v. Lynaugh*, 884 F.2d 871, 876 (5th Cir. 1989), *cert. denied*, 110 S.Ct. 1311 (1990). In order to obtain federal habeas relief, a

---

³ To the extent defendant attempts to relitigate his Fourth Amendment claims under the guise of prosecutorial misconduct, he is barred from doing so. *See Thompson v. United States*, 7 F.3d 1377, 1379 (8th Cir. 1993), *cert. denied*, 114 S.Ct. 1383, *and cert. denied*, 114 S.Ct. 1556 (1994) (holding that claim of prosecutorial misconduct is not cognizable in section 2255 proceeding where appellate court has already decided the underlying issues).

defendant must affirmatively show how the actions of his attorney deprived him of a fair trial. *See Czere v. Butler*, 833 F.2d 59, 63-64 (5th Cir. 1987).

Here, defendant has failed to satisfy either prong of the *Strickland* analysis. Defendant does not specify what authority or relevant law his attorney should have researched. Instead, defendant accuses trial counsel of focusing on a "manufactured consent theory" that was not supported by legal precedent. Such conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue. *See United States v. Holmes*, 406 F.3d 337, 361 (5th Cir.), *cert. denied*, 126 S.Ct. 375 (2005). Nor was counsel ineffective for allowing the prosecutor to sponsor perjured testimony and for not impeaching Fomby with his prior inconsistent statements. Not only is there no evidence that Fomby lied at trial, but as previously discussed, the testimony challenged by defendant was not material to the suppression ruling. These grounds for relief should be overruled.[4]

2.

For the same reasons, defendant has failed to demonstrate that he received ineffective assistance of counsel on appeal. "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.), *cert. denied*, 110 S.Ct. 419 (1989); *see also Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct.

---

[4] Defendant's ineffective assistance of counsel claim is also undermined by dicta in the opinion affirming his conviction. After holding that one of the Fourth Amendment issues raised by defendant, challenging the search of his wallet, was not adequately briefed or preserved for appellate review, the Fifth Circuit noted:

> Our discussion of the failure to adequately brief this issue at the appellate level and raise it below should not be understood as criticism of Scroggins's counsel. Both sides in this complicated case have been ably represented. Scroggins's counsel made defensible decisions to emphasize arguments that, if successful, would have required suppression of the firearms, as opposed to the wallet-search which could only raise the more difficult issue of suppressing evidence of Scroggins's status as a felon.

*Scroggins*, 599 F.3d at 488 n.9.

3308, 3312-13, 77 L.Ed.2d 987 (1983). Instead, counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1156 (2004); *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999). In order to prove ineffective assistance of appellate counsel, a defendant must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000), *citing Strickland*, 104 S.Ct. at 2064. This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id., quoting Williamson*, 183 F.3d at 462.

Counsel raised three non-frivolous issues in a well-researched brief, including two claims challenging the search of defendant's home on Fourth Amendment grounds. Although counsel did not raise the additional claims suggested by defendant, there is no reason to believe that his conviction would have been reversed had those claims been raised on direct appeal. Moreover, all of those claims have been rejected on collateral review. *See Coker v. Thaler*, 670 F.Supp.2d 541, 554 (N.D. Tex. 2009), *appeal dism'd*, No. 09-11180 (5th Cir. Jan. 28, 2010) (appellate counsel was not ineffective for failing to appeal conviction on grounds that were considered and rejected on collateral review). These grounds for relief should be overruled.

## RECOMMENDATION

Defendant's motion to correct, vacate, or set aside sentence should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 21, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE